# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 70

*April Term, A.D. 2021*

*May 19, 2021*

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

DAVID E. SINGLETON, WSB
#7-5372,

Respondent.

D-21-0002

## ORDER OF PUBLIC CENSURE

[¶ 1]   **This matter** came before the Court upon a "Report and Recommendation for Public Censure," filed herein April 29, 2021, by the Board of Professional Responsibility for the Wyoming State Bar, pursuant to Rule 12 of the Wyoming Rules of Disciplinary Procedure (Stipulated Discipline).  The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent David E. Singleton should be publicly censured for his conduct.  It is, therefore,

[¶ 2]   **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's "Report and Recommendation for Public Censure," which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶ 3]   **ADJUDGED AND ORDERED** that David E. Singleton is hereby publicly censured for his conduct, which is described in the Report and Recommendation for Public Censure.  The Wyoming State Bar may issue a press release consistent with the one set out in the Report and Recommendation for Public Censure; and it is further;

[¶ 4]   **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Mr. Singleton shall reimburse the Wyoming State Bar the amount of $50.00, representing the costs incurred in handling this matter, as well as pay the administrative fee of $750.00. Mr. Singleton shall pay the total amount of $800.00 to the Wyoming State Bar on or before July 15, 2021. If Mr. Singleton fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶ 5]   **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶ 6]   **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶ 7]   **ORDERED** that the Clerk of this Court cause a copy of this Order of Public Censure to be served upon Respondent David E. Singleton.

[¶ 8]   **DATED** this 19ᵗʰ day of May, 2021.

**BY THE COURT:**

/s/

**MICHAEL K. DAVIS**
**Chief Justice**

D-21-0002

IN THE SUPREME COURT
STATE OF WYOMING
FILED

APR 29 2021

SHAWNA GOETZ, CLERK

**BEFORE THE SUPREME COURT**
**STATE OF WYOMING**

*In the matter of*
*DAVID E. SINGLETON,*
*WSB 7-5372,*

*Respondent.*

)
)
)
)
)
)

*WSB No. 2020-065*

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

THIS MATTER came before a Review Panel of the Board of Professional Responsibility via Zoom videoconference on the 6th day of April, 2021, for consideration of the parties' Stipulation for Public Censure pursuant to Rules 9 and 12 of the Wyoming Rules of Disciplinary Procedure. Present for the videoconference were Review Panel members Christopher Hawks (Chair), Katherine Strike and Tandy Dockery. Mark W. Gifford, Bar Counsel, appeared on behalf of the Wyoming State Bar. Respondent David E. Singleton appeared with his counsel, Jeremy D. Michaels. The Review Panel having reviewed the Stipulation, the supporting Affidavit and being fully advised in the premises, finds, concludes and recommends:

### Findings

1. Respondent has been licensed to practice in Wyoming since 2014 and is engaged in the active practice of law in Cheyenne, Wyoming. At all times relevant to this matter, he was employed as a Senior Assistant District Attorney for Laramie County, Wyoming.

2. The complaint against Respondent in the above-captioned matter was submitted in August 2020 by Cheyenne lawyer Thomas B. Jubin ("Jubin"), who represented two defendants, Deborah Palm-Egle and Joshua Egle, in a criminal matter Respondent prosecuted in his role as Senior Assistant District Attorney.

3. In early November 2019, Wyoming Division of Criminal Investigation ("DCI") Special Agent Jon Briggs contacted Respondent by phone regarding a tip agents received about a

barn in eastern Laramie County. Specifically, Agent Briggs informed Respondent he and other agents had located a barn with numerous marijuana-type plants hanging and suspended by wire across the barn.

4.     DCI agents obtained a search warrant and, on November 4, 2019, seized the plant material (from a farm owned by Deborah Palm-Egle and Joshua Egle) for the purpose of testing to determine whether tetrahydrocannabinol ("THC") was present.

5.     THC is the psychoactive compound in marijuana, which comes from the buds and leaves of a hemp plant. By statute, hemp whose buds and leaves have a THC content of more than .3% are categorized as marijuana. Buds and leaves having a THC content of .3% or less, on the other hand, may be used in the manufacture of cannabidiol ("CBD"), a cannabinoid compound that is considered by some to be of therapeutic value for various maladies, including epilepsy, pain and anxiety, and is commercially marketable.

6.     Present at the Egles' farm when the search warrant was executed were Brock Dykes, a construction contractor hired by Egles to perform some work on the property, and Shannon Dykes, Brock Dykes' wife. Agent Briggs and Agent Jason Moon interviewed Brock Dykes and conducted a separate interview of Shannon Dykes. During his interview, Brock Dykes showed the agents test results from Botanacor, an independent laboratory hired by Egles to test samples of the hemp crop. The test results, which were stored on Dykes' smart phone and were later texted to Agent Moon by Dykes, showed THC levels for each of the two tested samples to be less than .3%.

7.     On November 6, 2019, Cheyenne attorney Robert Moxley contacted Respondent and informed Respondent that he was likely going to represent the farm owners, Joshua Egle and Deborah Palm-Egle. Mr. Moxley conveyed to Respondent this was a hemp farm and DCI agents should not have seized the plant material, despite the warrant agents had obtained and served.

2

Mr. Moxley further asked Respondent to relay what charges were forthcoming and any other information about the case Respondent could share. Respondent informed Mr. Moxley he had not filed charges and at this point was unable to tell him whether Respondent would be filing charges against any potential defendant because Respondent did not have sufficient information.

8.    Subsequent to seizure of the plant material from the Egles' farm, Agent Briggs submitted certain portions of the material for quantification testing, i.e., to determine the amount of THC present in a representative sample of the plants. From roughly the beginning of December 2019 to late February 2020, there was little or no activity regarding the matter.

9.    On February 20, 2020, Agent Briggs emailed to Respondent a summary of the report he received regarding testing of a representative sample of the plant material. The summary of the report revealed that all but one of the samples was above .3% THC. Briggs suggested filing various felony charges against Deborah Palm-Egle, Josh Egle, Brock Dykes and Shannon Dykes.

10.    On April 6, 2020, Respondent filed charges against the Egles and the Dykes. Respondent charged Josh Egle and Deborah Palm-Egle, Mr. Jubin's clients, with conspiracy to manufacture, deliver, or possess marijuana; possession of marijuana with intent to deliver; felony possession of marijuana; and cultivation of marijuana.

11.    The preliminary hearing was held July 9, 2020, before First Judicial District Circuit Court Judge Antoinette Williams. At the hearing Respondent called Agent Briggs as the only witness on behalf of the State. During Agent Briggs' direct testimony, Respondent elicited the following testimony regarding the November 3, 2019, interview Agents Briggs and Moon conducted with Brock Dykes:

> Q.    Were you ever provided or other agents provided with testing from any of the defendants of those plants?

3

A.      There was a document that was shown to Special Agent Moon and myself. I believe there may have been others that saw it as well.

Q.      Do you know where that test came from?

A.      Mr. Dykes showed it to me on his cell phone, I believe it was.

Q.      And what was it a test of? Or purporting to be a test of?

A.      Of quantification of the amount of THC from – I believe it to be from a plant material.

Q.      Do you know what plant material?

A.      Mr. Dykes indicated it was provided to him by Mr. Egle to be representative of the plants that were grown and hanging in the barn?

Q.      But you can't be certain that those tests that you were shown were related to the plants that you seized and subsequently had tested?

A.      No, I could not.

12.      On cross-examination by Mr. Jubin, Agent Briggs testified that the test results shown to the two DCI agents by Brock Dykes during his November 4, 2019, interview "may have actually been over .3 percent as well." Mr. Jubin then handed Agent Briggs Exhibits A-1 and A-2, the Botanacor test results Mr. Dykes had shown Agents Briggs and Moon on Mr. Dykes' cell phone. Briggs testified, "I don't recall if these were the exact ones that were presented to me at that time." The test results Mr. Dykes had shown the two agents (which Dykes then texted to Agent Moon) indicated a THC of less than .3% for each of the tested samples.

13.      The preliminary hearing did not conclude on July 9, 2020, and was later scheduled to resume on August 6, 2020.

14.      On July 23, 2020, Respondent received a letter from Mr. Jubin in which he pointed out what he perceived to be errors in the State's theory of the case, primarily regarding Agent Briggs' testimony of specifically where THC is contained within the plants.

4

15.    At 4:45 p.m. on Friday, July 24, 2020, Mr. Jubin sent an email to Agent Briggs in which he pointed out inaccuracies in Agent Briggs' testimony. Quoting from Mr. Jubin's email: "You also testified that as you recall one of the tests provided by Brock Dykes to agents – tests Mr. Dykes told agents were provided to him by Josh Egle – was over .3% THC. That is not accurate. I subpoenaed Agent Moon, and he has compared the first two pages of the preliminary hearing Exhibit A – the pages Dykes provided the agents. Neither test exceeded .3%. They were not even close. Again, I hope I am correct in presuming that you would want to ensure that the Court is provided with accurate information." Mr. Jubin asked Agent Briggs to "correct [his] sworn testimony,"

16.    At 6:50 p.m. on July 24, 2020, Respondent received the following text message from Agent Briggs: "Dude, Jubin is going hard in the paint. He is sending me emails, trying to tell me my testimony is wrong." Respondent responded, "He sent me an email yesterday and said the same thing. Not trying to be antagonistic just trying to 'educate' me. That about sum it up?" Agent Briggs responded, "Oh ya. 'I'm giving you the chance to correct your testimony'. Is there any recourse against him for such activity. [sic] He is actually insane."

17.    At 1:46 p.m. on Monday, July 27, 2020, Agent Briggs forwarded Mr. Jubin's July 24 email to Respondent with a forwarding note, "Here is what Jubin sent me. I forwarded it to Jenny [Craig] at the AG's office as well."

18.    On the afternoon of Wednesday, August 5, 2020, the day before the preliminary hearing was scheduled to resume, Mr. Jubin sent an email to Respondent which included the following: "I am wondering about your plans to correct the information that Agent Briggs presented to the Court. I sent that to him and then to his counsel at the AG's office as well."

19.    The preliminary hearing resumed and concluded on Thursday, August 6, 2020. The first several minutes of the hearing were not transcribed, though an audio recording was

5

maintained. During the unreported portion of the hearing, Respondent brought to Judge Williams' attention that Mr. Jubin had contacted Agent Briggs directly after the July 6, 2020, hearing and asked him to correct certain testimony. Respondent stated, "The State believes it is wholly improper for the defense to have asked a witness of the State to correct testimony or change testimony." Respondent now recognizes that in encouraging both Agent Briggs and Respondent to correct Agent Briggs' inaccurate testimony, Mr. Jubin was merely fulfilling his Rule 3.3(a)(3) obligation of professional responsibility. Rule 3.3(a)(3), W.R.Prof.Cond., provides, "If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Respondent now recognizes and acknowledge that Mr. Jubin and Respondent both had this responsibility as officers of the Court.

20.     The hearing resumed with Mr. Jubin re-calling Agent Briggs back to the stand. When asked about the July 24, 2020, email Mr. Jubin had sent to Agent Briggs in which he pointed out inaccuracies in his July 9 testimony (and the follow-up letter sent July 27, 2020, which contained the same information), Agent Briggs testified, "To be honest, sir, I didn't read your e-mail. I forwarded it to counsel." Mr. Jubin, of course, had no way of knowing whether Agent Briggs was being honest or not, but Respondent was aware of the falsity of Agent Briggs' testimony and failed to correct it on the record. In this regard, Respondent conditionally admits he committed a violation of Rule 3.3(a)(3).

21.     On redirect of Agent Briggs, Respondent attempted to shore up Agent Briggs' professed lack of recollection as to the contents of the Botanacor test results, asking, "So you didn't see them on the day of the execution of the search warrant?" Agent Briggs responded, "I don't recall paying attention to them, no." Respondent pressed on, "And by saying that, is it possible that Agent Moon may have told you or shown you, but you don't recall?" Agent Briggs re-

6

sponded, "Yes. I was trying to figure out the scene and interviews and things of that nature." Thus, rather than correct the inaccurate testimony he offered at the first hearing regarding the test results, Agent Briggs continued the prevarication. Respondent conditionally admits that his questions to Agent Briggs on redirect, rather than clarify the record as to Agent Briggs' prior testimony, had the effect of further muddying the record and, accordingly, constituted another breach of his obligation of candor to the tribunal pursuant to Rule 3.3(a)(3).

22.     At the conclusion of the preliminary hearing, Judge Williams ruled that there was not sufficient evidence of intent on the part of the defendants to possess, distribute, or conspire regarding marijuana and declined to bind the felony charges over to district court. In light of those findings, Respondent dismissed the remaining charges.

23.     Respondent conditionally admits that the conduct as set forth above constitutes two violations of Rule 3.3 (duty of candor to the tribunal) of the Wyoming Rules of Professional Conduct. Respondent agrees that the appropriate sanction for such conduct is a public censure.

### Determination of the appropriate sanction

24.     The duty violated by Respondent. Within the analytical framework of the ABA Standards for Imposing Lawyer Sanctions, Respondent violated a duty owed to the legal system. Standard 6.1 sets forth the sanction guidelines for lawyers who demonstrate lack of candor to the tribunal and is applicable to situations in which lawyers have committed a violation of Rule 3.3. Applying ABA Standard 6.1 to Respondent's case, the presumptive sanction, before applying other factors set forth below, is suspension.

25.     Respondent's mental state. Respondent acted with knowledge but not intent to deceive the court in failing to correct the false testimony given by Agent Briggs.

26.     Injury caused by Respondent's conduct. In Respondent's case, there was the potential for harm to the legal system as well as the defendants in the underlying case.

7

27. _Aggravating and mitigating factors._ In Respondent's case, mitigating factors include absence of a prior disciplinary record and full and free disclosure of Bar Counsel and a cooperative attitude toward proceedings. There are no aggravating factors.

28. Considering the significant mitigating factors, the absence of aggravating factors, and in further consideration of the acceptance of responsibility expressed by Respondent during the Review Panel hearing, the Panel finds that the appropriate censure for Respondent's misconduct is a public censure.

29. If the Court issues an Order of Public Censure in accordance herewith, the parties agree to the following press release:

> The Wyoming Supreme Court has issued an order of public censure of Cheyenne attorney David E. Singleton. The order stems from Singleton's conduct as a prosecutor in bringing charges against a pair of hemp farmers, a construction contractor, and the contractor's wife, whom Singleton alleged were engaged in a conspiracy to manufacture, deliver, or possess marijuana; possession of marijuana with intent to deliver a felony; felony possession of marijuana; and cultivation of marijuana, a misdemeanor. In the course of testifying at a preliminary hearing, the law enforcement officer upon whose investigation the charges were brought testified falsely with respect to material aspects of the case. Singleton knew the testimony was false but failed to bring the falsity of such testimony to the court's attention. At the conclusion of the preliminary hearing, the presiding judge found there was not sufficient evidence of intent on the part of the defendants to possess, distribute, or conspire regarding marijuana and declined to bind the felony charges over to district court. One of the defense attorneys brought concerns regarding Singleton's conduct to the attention of Bar Counsel for the Wyoming State Bar. As a result of Bar Counsel's investigation, the parties reached a stipulation that Singleton had committed two violations of his obligation of candor to the court and agreed that a public censure was the appropriate sanction for such conduct. In considering the stipulated resolution, the Board of Professional Responsibility (BPR) of the Wyoming State Bar was satisfied that Singleton acted with knowledge but not with intent to deceive the court in failing to correct the law enforcement officer's false testimony. Therefore, the BPR approved the parties' stipulated resolution and recommended that the Wyoming Supreme Court issue a public censure of Singleton. In adopting the BPR's recommendation, the Court ordered Singleton to pay an administrative fee of $750.00 and costs in the amount of $50.00 to the Wyoming State Bar.

## Conclusions of law

30. Rule 3.3, W.R.Prof.Cond., provides:

8

Rule 3.3. Candor toward the tribunal.

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

(c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.
***

31.     Rule 15(b)(3)(D), W.R.Disc.P., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:"

1.  Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
2.  Whether the lawyer acted intentionally, knowingly, or negligently;
3.  The amount of the actual or potential injury caused by the lawyer's misconduct; and
4.  The existence of any aggravating or mitigating factors.

32.     ABA Standard 6.1, "False Statements, Fraud, and Misrepresentation," provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:

9

6.11   Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

6.12   Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

6.13   Reprimand [i.e., a public censure pursuant to Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer is negligent either in determining whether the statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal system, or causes an adverse or potentially adverse effect on the legal proceeding.

6.14   Admonition [i.e., a private reprimand pursuant to Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether the submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.

33.   The Preface to the ABA Standards includes the following discussion regarding mental state:

> The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

34.   Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have re-

10

sulted from the lawyer's misconduct."

35.    ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1    *Generally*
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2    *Aggravation*

9.21   *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22   *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.

9.3    *Mitigation.*

9.31   *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32   *Factors which may be considered in mitigation.* Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
  (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
  (2) the chemical dependency or mental disability caused the misconduct;
  (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
  (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

11

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4 *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced of compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure if injured client to complain.

## Recommendation

In consideration of the foregoing findings of fact and conclusions of law, the Review Panel recommends as follows:

1. That an Order of Public Censure be issued to Respondent for violations of Rule 3.3, W.R.Prof.Cond.

2. That, upon issuance of the Order of Public Censure, the foregoing press release may be issued.

3. That Respondent be required to pay an administrative fee of $750.00 and costs of $50.00 to the Wyoming State Bar.

Dated this 27ᵗʰ day of April, 2021.

Christopher Hawks, Chair
Review Panel of the Board of Professional
Responsibility
Wyoming State Bar

12